IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| TYRONE SHAW, | § § § § | |
| *Plaintiff*, | | |
| v. | § § § | Case No. _____ |
| CORECIVIC OF TENNESSEE, LLC, and ALEXIE PRUITT, | § § § § | JURY DEMANDED |
| *Defendants*. | § | |

# COMPLAINT

For his Complaint against the Defendants, the Plaintiff states to the Court and the Jury as follows:

## I. INTRODUCTION

1. On June 20, 2023, Defendant Alexie Pruitt—a correctional officer for Defendant CoreCivic of Tennessee, LLC—slammed a cell door on Plaintiff Tyrone "TJ" Shaw's hand. The force of the impact severed and partially amputated one of Mr. Shaw's fingers, causing Mr. Shaw to suffer severe pain and permanent disfigurement.

2. Although there is abundant evidence indicating that Defendant Pruitt intentionally injured Mr. Shaw, Defendant Pruitt later insisted, as part of Mr. Shaw's resulting grievance proceedings, "that she didn't mean for inmate Shaw's hand to be closed in the door and it was just [an] accident."

3. Despite severely and permanently injuring Mr. Shaw and also maintaining that the injury was caused by an "accident," the Defendants have repeatedly refused to accept responsibility for Mr. Shaw's injuries and have refused to pay him anything.

4. This lawsuit thus seeks an award of compensatory and punitive damages for the severe, permanent, and uncompensated injuries that Mr. Shaw has suffered and continues to suffer as a result of his preventable loss of a limb.

## II. PARTIES

5. Plaintiff Tyrone "TJ" Shaw is a citizen and resident of the State of Tennessee. At all times relevant to this Complaint, Mr. Shaw has been in the custody of the Davidson County-based Tennessee Department of Correction and housed in Whiteville Correctional Facility, a private prison operated by Defendant CoreCivic of Tennessee, LLC. Mr. Shaw may be contacted through counsel.

6. Defendant CoreCivic of Tennessee, LLC ("CoreCivic")—which went by the name "Corrections Corporation of America" until that name became synonymous with the most insidious aspects of America's private prison industry—is a private, for-profit prison corporation headquartered in Williamson County, Tennessee. CoreCivic owns and operates Whiteville Correctional Facility, the private prison at which Mr. Shaw resided when his hand was injured. CoreCivic is a citizen of Tennessee with its principal place of business and corporate headquarters located in Brentwood, Williamson County, Tennessee. CoreCivic may be served with process through its registered agent at CoreCivic of Tennessee, LLC, Registered Agent: C T CORPORATION SYSTEM, 300 MONTVUE RD., KNOXVILLE, TN 37919-5546.

7. Defendant Alexie Pruitt is a citizen of Tennessee who at all times relevant to this Complaint was employed as a correctional officer at Whiteville Correctional Facility. Defendant Pruitt may be served with process at her residence at 1821 SIERRA ST, MEMPHIS TN 38128-6818, or wherever she may be found.

### III. JURISDICTION AND VENUE

8. This Court has jurisdiction over the Plaintiff's federal claims in this civil action pursuant to 28 U.S.C. § 1331.

9. This Court has supplemental jurisdiction to adjudicate the Plaintiff's state law claims related to Plaintiff's federal claims in this action pursuant to 28 U.S.C. § 1367(a).

10. As the judicial district where Defendant CoreCivic is headquartered and resides, venue is proper here pursuant to 28 U.S.C. § 1391(b)(1).

### IV. FACTUAL ALLEGATIONS

11. On June 20, 2023, Plaintiff Tyrone Shaw was incarcerated at Defendant CoreCivic's Whiteville Correctional Facility in KB Pod.

12. At all times relevant to this Complaint, the Defendants owed Mr. Shaw a duty of reasonable care.

13. At all times relevant to this Complaint, the Defendants owed Mr. Shaw a "duty to exercise ordinary diligence to keep [Mr. Shaw] safe and free from harm, to render him medical aid when necessary, and to treat humanly and refrain from oppressing [him]." *See Laws v. State of Tennessee Dep't of Correction*, No. C.A. 36, 1986 WL 8820, at *1 (Tenn. Ct. App. Aug. 14, 1986).

14. On June 20, 2023, Defendant Pruitt was working at Whiteville Correctional Facility as a correctional officer and staffed in KB Pod.

15. Mr. Shaw returned to KB Pod around 2:20 p.m. CST after meeting with the chaplain.

16. When Mr. Shaw returned to KB Pod, his cell door was locked.

17. Mr. Shaw then asked Defendant Pruitt to unlock his cell. Defendant Pruitt

refused to do so at that time and left the pod.

18. At or about 3:00 p.m. CST, Defendant Pruitt returned to KB Pod to conduct count.

19. To conduct count, Defendant Pruitt had to unlock each locked cell in the pod to allow inmates to enter their cells and be counted.

20. Defendant Pruitt began by unlocking the cells on the top tier of KB Pod.

21. Defendant Pruitt then descended to the bottom level to unlock the remaining cells, which included Mr. Shaw's.

22. When Defendant Pruitt got to Mr. Shaw's cell, she passed by it without unlocking it.

23. When Defendant Pruitt eventually returned to unlock Mr. Shaw's cell, she stated that she saved him for last because he was "special."

24. Defendant Pruitt told Mr. Shaw she would allow him to close his own cell door once inside.

25. Defendant Pruitt also told Mr. Shaw that she had "something special for" him.

26. Defendant Pruitt then unlocked Mr. Shaw's cell and allowed him to enter it.

27. Mr. Shaw remained at the door with his hand on the doorframe asking Defendant Pruitt what made him "special."

28. Before Mr. Shaw could finish his question, and instead of answering, Defendant Pruitt kicked or slammed Mr. Shaw's cell door closed on Mr. Shaw's hand.

29. Mr. Shaw's middle finger on his right hand was crushed by the force of the slammed door.

30. The tip of Mr. Shaw's middle finger on his right hand was completely

severed beneath his nail bed.

31. There was no need for Defendant Pruitt to immediately slam Mr. Shaw's cell door upon him entering the cell.

32. There was also no need to close Mr. Shaw's cell door with enough force to sever a bone.

33. Defendant Pruitt did not exercise reasonable care when closing Mr. Shaw's cell door.

34. Defendant Pruitt's actions toward Mr. Shaw were oppressive.

35. After Mr. Shaw's finger was severed, Mr. Shaw fell to the ground and began screaming in pain as his now-amputated finger sprayed blood into his cell like a sprinkler head.

36. Defendant Pruitt responded to Mr. Shaw's severe injury *by laughing* as Mr. Shaw writhed on the ground in pain in front of her, bleeding profusely.

37. Another inmate, Richard Carluccio, tried to help Mr. Shaw stop the bleeding from his hand. He also told Defendant Pruitt that: "it ain't nothing funny about that, you have cut his finger off."

38. In response, Defendant Pruitt ordered Mr. Carluccio to leave the cell.

39. After a period of delay, Defendant Pruitt called for medical assistance.

40. Non-medical staff that responded first told Mr. Shaw to calm down.

41. Medical staff then arrived a few minutes later and escorted Mr. Shaw to the prison's medical area, with one correctional staff member carrying his severed fingertip to the prison's medical area in a bag.

42. Once Mr. Shaw was removed from the cell, Defendant Pruitt instructed Mr. Carluccio that if he didn't clean up all the blood that had sprayed throughout the cell from

Mr. Shaw's amputated finger, CoreCivic would lock him in the cell with all the blood in there.

43. No pictures were taken of the cell in its bloody state before it was cleaned by inmates who were ordered to clean bodily fluids without adequate protective equipment.

44. No investigation was conducted into the incident before Defendant Pruitt ordered the evidence of Mr. Shaw's injuries spoliated.

45. Mr. Carluccio, who witnessed the incident, believes that Defendant Pruitt injured Mr. Shaw intentionally.

46. Shortly after being transported to the prison's medical area, Mr. Shaw was transported to Regional One Hospital in Memphis, Tennessee.

47. At Regional One, Mr. Shaw's already-severed finger was further amputated via a revision amputation procedure.

48. Doctors also had to smooth down the remaining exposed bone to ensure that they could safely close the wound and create a new "fingertip" for Mr. Shaw.

49. Following Mr. Shaw's hospitalization, Mr. Shaw initiated grievance proceedings to ensure that he could remain in his current pod—where he needed to be to complete a TDOC-ordered program—without Defendant Pruitt's continued presence.

50. During the grievance proceedings, Defendant Pruitt admitted to shutting Mr. Shaw's door on his hand, but she claimed "she didn't mean for inmate Shaw's hand to be closed in the door + it was just [an] accident."

51. Defendant Pruitt also admitted that she heard Mr. Shaw scream immediately after she shut his cell door.

52. Defendant Pruitt further admitted that, upon reopening the door, she saw blood.

53. Mr. Shaw's grievance process concluded with the grievance committee determining that Defendant Pruitt should "work another Unit away from [Mr.] Shaw so he can finish [his] program."

54. Today, Mr. Shaw continues to live in chronic pain and with severe mental and emotional trauma from having his finger violently severed by a correctional officer who was tasked with protecting him.

55. Mr. Shaw also lives with the partial loss of a limb he will never get back.

56. Despite Mr. Shaw's severe injuries, the Defendants have refused to make a reasonable, fair, prompt, or any offer of settlement to him whatsoever. This action followed.

## V. CAUSES OF ACTION

### CLAIM #1: NEGLIGENCE
### (AS TO DEFENDANT PRUITT)

57. Under Tennessee law, a negligence claim has five essential elements: (1) a legally recognized duty owed by the defendant to the plaintiff, (2) the defendant's breach of that duty, (3) an injury or loss, (4) causation in fact, and (5) legal cause.

58. Defendant Pruitt owed Mr. Shaw a duty of reasonable care while he was incarcerated at Whiteville Correctional Facility on June 20, 2023.

59. Despite that duty, Defendant Pruitt unreasonably and "accident[ally]" slammed Mr. Shaw's cell door while his hand was in the doorframe, resulting in the fingertip of his middle finger on his right hand being completely severed.

60. Following Mr. Shaw's injury, Defendant Pruitt stated that she accidentally shut Mr. Shaw's hand in his cell door.

61. Defendant Pruitt's actions resulted in Mr. Shaw's fingertip being violently

amputated.

62. As a result of Defendant Pruitt's breach of the duty of care owed to Mr. Shaw, Mr. Shaw: (1) lost a portion of his right middle finger; (2) suffered severe physical pain; and (3) suffered and continues to suffer mental and emotional trauma related to his injury.

CLAIM #2: NEGLIGENCE/VICARIOUS LIABILITY
(AS TO DEFENDANT CORECIVIC)

63. The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

64. At all times relevant to this Complaint, Defendant Pruitt was acting as an employee and agent of Defendant CoreCivic.

65. At all times relevant to this Complaint, Defendant Pruitt was performing official acts within the regular scope of her employment by Defendant CoreCivic.

66. Because Defendant Pruitt was an employee of Defendant CoreCivic and was acting as Defendant CoreCivic's agent on June 20, 2023, Defendant CoreCivic is vicariously liable to Mr. Shaw for Defendant Pruitt's negligence.

67. Based on the relationship between Defendant CoreCivic and Defendant Pruitt, Defendant CoreCivic is vicariously liable for Defendant Pruitt's negligence.

CLAIM #3: 42 U.S.C. § 1983 – VIOLATION OF 8TH/14TH AMENDMENT PROHIBITION ON CRUEL
AND UNUSUAL PUNISHMENT
(AS TO DEFENDANT PRUITT)

68. The Plaintiff incorporates and realleges the allegations set forth in Section IV of his Complaint as if fully set forth herein.

69. The Eighth Amendment has been incorporated against state actors, including, state prison officials, through the 14th Amendment.

70. "In determining whether a prison official has violated the Eighth Amendment's prohibition against excessive force, courts apply a two-part inquiry that is made up of subjective and objective components: (1) 'whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm,' i.e. the subjective component; and (2) whether the conduct, in context, is sufficient[ly] serious to offend 'contemporary standards of decency,' i.e., the objective component." *Hall v. Twitty*, No. 3:19-CV-212-RLJ-HBG, 2020 WL 7365310, at *3 (E.D. Tenn. Dec. 15, 2020) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6–9 (1992)).

71. Maliciously, and with the intent to cause Mr. Shaw harm, Defendant Pruitt sadistically slammed Mr. Shaw's cell door on Mr. Shaw's hand with enough force to sever his finger.

72. The door that Defendant Pruitt slammed shut on Mr. Shaw's hand did sever Mr. Shaw's finger.

73. Defendant Pruitt applied physical force against Mr. Shaw in bad faith and with enough force to sever a bone.

74. Before severing Mr. Shaw's finger, Defendant Pruitt told Mr. Shaw that she purposefully kept him from being able to enter his cell until all other cells in KB Pod had been opened because he was "special" and because she had "something special for" him.

75. The "special" something that Defendant Pruitt had for Mr. Shaw was a sadistic and brutal battery that resulted in him losing a limb.

76. Defendant Pruitt had a direct line of sight to Mr. Shaw's hand on his cell door when she forcefully slammed the door shut on it.

77. As a result of Defendant Pruitt's intentional and sadistic conduct, Mr. Shaw's middle finger on his right hand was completely and permanently severed below

- 9 -
Case 3:24-cv-00681    Document 1    Filed 06/04/24    Page 9 of 14 PageID #: 9

his nailbed.

78. In response to Mr. Shaw's severe injury, Defendant Pruitt *laughed*.

79. Because of Defendant Pruitt's excessive use of force, Mr. Shaw had to be hospitalized, and he suffered permanent disfigurement.

80. Mr. Shaw's fingertip was unable to be reattached at the hospital. Thus, his injury was treated by removing more bone in order to be able to safely close the wound.

81. Mr. Shaw suffered severe physical pain immediately after his finger was severed by the door Defendant Pruitt slammed shut, following his emergency hospitalization, and he still suffers severe physical pain today.

82. Defendant Pruitt's malicious, sadistic, and gratuitous battery was irreconcilable with any contemporary standards of decency.

<u>CLAIM #4: BATTERY</u>
(AS TO DEFENDANT PRUITT)

83. The Plaintiff incorporates and realleges the allegations set forth in Section IV of his Complaint as if fully set forth herein.

84. Under Tennessee law, "[a] battery is an intentional act that causes an unpermitted, harmful, or offensive bodily contact." *Doe v. Mama Taori's Premium Pizza, LLC*, No. M1998-00992-COA-R9-CV, 2001 WL 327906 (Tenn. Ct. App. Apr. 5, 2002) (citing *Cary v. Arrowsmith*, 777 S.W.2d 8, 21 (Tenn. Ct. App. 1989)).

85. Under Tennessee law, "[t]he intent required for a battery is not an intent to cause harm. It is an intent to do the act that causes the harm." *Kelley v. Root*, No. W2022-01625-COA-R3-CV, 2024 WL 323320, at *4 (Tenn. Ct. App. Jan. 29, 2024).

86. Defendant Pruitt intentionally did the act that caused Mr. Shaw harm.

87. Defendant Pruitt intentionally closed Mr. Shaw's cell door.

88. Defendant Pruitt intentionally closed Mr. Shaw's cell door on Mr. Shaw's

hand.

89. Mr. Shaw was standing at or near his cell door conversing with Defendant Pruitt when his hand was injured.

90. Defendant Pruitt knew that Mr. Shaw was at or near his cell door given that his hand was on the doorframe.

91. Defendant Pruitt also knew Mr. Shaw was at or near his cell door given that he was in the middle of asking her a question related to their ongoing conversation at the time she slammed his cell door.

92. Defendant Pruitt did not have Mr. Shaw's permission to close Mr. Shaw's cell door on his hand.

93. Defendant Pruitt intentionally shut the cell door with unnecessary force.

94. Defendant Pruitt's intentional actions caused Mr. Shaw's cell door to slam shut.

95. As a result of Defendant Pruitt slamming Mr. Shaw's cell door shut with force, his middle fingertip was completely severed from his right hand.

96. After injuring Mr. Shaw, Defendant Pruitt laughed.

97. As a result of Defendant Pruitt's intentional conduct, Mr. Shaw lost part of his hand.

98. Mr. Shaw's bone was further reduced during a revision amputation procedure at the hospital that same day, which included removing exposed bone with a rongeur, a sharp surgical instrument used to gouge out bone.

99. As a result of Defendant Pruitt's intentional conduct, Mr. Shaw experienced severe pain when his fingertip was brutally severed from his hand and in the aftermath of that injury.

100. As a result of Defendant Pruitt's intentional conduct, Mr. Shaw continues to experience mental and emotional anguish related to the trauma of having his finger brutally and pointlessly amputated.

CLAIM #5: ASSAULT
(AS TO DEFENDANT PRUITT)

101. The Plaintiff incorporates and realleges the allegations set forth in Section IV of his Complaint as if fully set forth herein.

102. Under Tennessee law, "[a]ssault occurs when 'a defendant intends to create an apprehension of harm in the plaintiff[.]'" *Kelley v. Root*, No. W2022-01625-COA-R3-CV, 2024 WL 323320, at *4 (Tenn. Ct. App. Jan. 29, 2024) (quoting *Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 371 (Tenn. 2011)).

103. Defendant Pruitt intended to create an apprehension of harm in Mr. Shaw when she slammed his cell door on his hand.

104. Mr. Shaw was standing at or near his cell door conversing with Defendant Pruitt when his hand was injured.

105. Before shutting the door on his hand, Defendant Pruitt knew Mr. Shaw was at or near his cell door given that his hand was on the doorframe.

106. Before shutting the door on his hand, Defendant Pruitt also knew Mr. Shaw was at or near his cell door because he was in the middle of asking her a question related to their ongoing conversation.

107. Defendant Pruitt had no need to shut Mr. Shaw's cell door at all, as she had just told Mr. Shaw she would allow him to shut his own cell door.

108. Defendant Pruitt had no need to shut Mr. Shaw's cell door with enough force to sever a bone, but she did so anyway.

109. To give Mr. Shaw "something special" and create apprehension, Defendant Pruitt abruptly and rapidly shut Mr. Shaw's cell door with enough force to sever a finger.

110. As a result of Defendant Pruitt rapidly slamming Mr. Shaw's cell door shut, Mr. Shaw's middle fingertip was completely severed from his right hand.

111. Defendant Pruitt's assault caused Mr. Shaw severe injury.

112. Mr. Shaw's bone was then further reduced during a necessary revision amputation procedure at the hospital that same day, which included removing exposed bone with a rongeur, a sharp surgical instrument used to gouge out bone.

113. As a result of Defendant Pruitt's intentional conduct, Mr. Shaw has permanently lost part of his hand.

114. As a result of Defendant Pruitt's intentional conduct, Mr. Shaw experienced severe pain when his fingertip was brutally severed from his hand and in the aftermath of that injury.

115. As a result of Defendant Pruitt's intentional conduct, Mr. Shaw continues to experience mental and emotional anguish related to the trauma of having his finger brutally and pointlessly amputated.

## VI.  PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for the following relief:

1. That proper process issue and be served upon the Defendants, and that the Defendants be required to appear and answer this Complaint within the time required by law;

2. That Plaintiff be awarded all compensatory, consequential, and incidental damages to which Plaintiff is entitled in an amount not less than $1.5 million;

3. That Plaintiff be awarded punitive damages in an amount not less than $3 million;

4. That Plaintiff be awarded reasonable attorney's fees pursuant to 42 U.S.C. § 1988(b);

5. That a jury of 12 be empaneled to try this cause;

6. That pre-judgment and post-judgment interest be awarded to the Plaintiff;

7. That the Plaintiff be awarded all further relief to which he is entitled.

Respectfully submitted,

/s/ Daniel A. Horwitz_____
Daniel A. Horwitz, BPR #032176
Melissa Dix, BPR #038535
HORWITZ LAW, PLLC
4016 Westlawn Dr.
Nashville, TN 37209
daniel@horwitz.law
melissa@horwitz.law
(615) 739-2888

*Counsel for Plaintiff*